**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George L. Mortensen, individually and as Personal Representative of his deceased wife Erna H. Mortensen,<br><br>Plaintiff,<br><br>vs.<br><br>Home Loan Center, Inc. (HLC), a California corporation, dba Lending Tree Loans; RLI Insurance Company, an Illinois corporation; Kenneth J. Block, designated broker for HLC; and Anthony Gutierrez, a Senior Mortgage Banker with HLC,<br><br>Defendants. | No. CV-08-1669-PHX-NVW<br><br>**ORDER** |

Before the Court are Defendants' and Plaintiff's Motions for Summary Judgment. (Doc. 73, 76.) Plaintiff's request for oral argument will be denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## I.     Legal Standard

Summary judgment is proper if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce evidence and show there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d

1099, 1102 (9th Cir. 2000). If the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may carry its initial burden of production under Rule 56(c) by producing "evidence negating an essential element of the nonmoving party's case," or by showing, after suitable discovery, that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000); *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).

The party seeking summary judgment bears the initial burden of identifying the basis for its motion and those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has carried its burden, the nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To defeat a motion for summary judgment, the nonmoving party must show that there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

On summary judgment, the nonmoving party's evidence is presumed true, and all inferences from the evidence are drawn in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001). But the evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory and speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In an ordinary civil case, *pro se* litigants are not treated more favorably than parties with attorneys of record. *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

1 Moreover, *pro se* litigants must follow the same rules of procedure that govern other
2 litigants. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

3 **II.    Background**

4     In 2005, George and Erna Mortensen sold their home in Peoria, Arizona, in order
5 to pay some of their credit card debt. They reserved approximately $65,000 of the
6 proceeds for a down payment on a new house. In June 2005, they executed a purchase
7 agreement with William Lyons Homes to buy a home in Surprise, Arizona, which they
8 intended to live in for about a year while on a waiting list to purchase a more expensive
9 Richmond American home in a gated community in Surprise. William Lyons Homes
10 required prospective buyers to obtain pre-approval through its preferred lender, Duxford
11 Financial, which offered the Mortensens a thirty-year home loan at a fixed rate of five or
12 six percent with monthly payments of $1,500 or $1,600.

13     Although both Mortensens signed the purchase agreement with William Lyons
14 Homes, they decided to remove Mr. Mortensen's name from the contract, title, and loan
15 so that he could apply for a separate loan to finance as his primary residence the home
16 they intended to purchase in the gated community. In the summer or fall of 2005, they
17 entered into a contract to purchase the Richmond American home, but later canceled that
18 contract.

19     Instead of accepting Duxford Financial's loan offer for the William Lyons home,
20 the Mortensens obtained a thirty-year variable rate loan from the Home Loan Center (the
21 "Loan"). Mr. Mortensen negotiated the terms of the Loan with Anthony Gutierrez, a
22 Home Loan Center employee. Mrs. Mortensen did not speak with Gutierrez or anyone
23 else at the Home Loan Center until after the closing of the Loan.

24     On July 18, 2005, Home Loan Center sent the Mortensens a "Purchase
25 Certification of Loan Pre-Approval Commitment." On July 20, 2005, Mr. Gutierrez
26 prepared a loan application from information provided telephonically by Mr. Mortensen.
27 Also on July 20, 2005, Home Loan Center mailed the Mortensens federally required
28 disclosures, including an "ARM Program Disclosure," a good faith estimate of settlement

- 3 -

charges, and a preliminary Truth in Lending Act disclosure. On July 22, 2005, Home Loan Center mailed the Mortensens a "Lock-in Disclosure and Agreement," which Mrs. Mortensen signed to lock in the initial interest rate of the Loan.

Mrs. Mortensen did not remember reading any of the documents the Mortensens received. Before closing, Mrs. Mortensen discussed with her husband what their anticipated payments on the Loan would be, but she did not know what the loan interest rate would be. She did not remember that the first month's interest rate would be one percent and remembered focusing only on the monthly payment schedule.

On August 18, 2005, Mrs. Mortensen attended the closing at the offices of Security Title alone because Mr. Mortensen was out of town. At closing, Mrs. Mortensen was presented with loan documents, including an "Adjustable Rate Mortgage Loan Program Disclosure," a "Prepayment Penalty Option Disclosure," a Truth in Lending Disclosure Statement, the Adjustable Rate Note, and Deed of Trust. The Adjustable Rate Note executed by Mrs. Mortensen during closing advises of possible negative amortization in Section 3(E) titled "Additions to My Unpaid Principal." Mrs. Mortensen did not notice the loan interest rate on the closing documents, but rather focused on the payment plan, which she found to be "pretty favorable."

During closing, the closing officer specifically explained to Mrs. Mortensen there was a three-year prepayment penalty, which concerned Mrs. Mortensen. She tried to call Mr. Mortensen regarding the prepayment penalty, but he did not answer his telephone. She considered not signing the loan documents that day, but decided to go ahead with the closing because their temporary living conditions were very inconvenient and stressful.

The Loan has four payment options: negative amortization, interest only, full fifteen-year amortization, and full thirty-year amortization. When the Loan originated, the minimum monthly payment was $802.81 for the first year. As of September 2009, the minimum monthly payment was approximately $1,100, and the interest-only payment was approximately $1,200.

Three to six months after closing, the Mortensens tried to sell their William Lyons home. The only offer they received was for $300,000, which they rejected because they had purchased the house for approximately $326,000.[1] In early 2006, they obtained a home equity line of credit in the amount of $65,000 on the William Lyons home.

On January 29, 2007, Mrs. Mortensen sent a memo to Countrywide Mortgage Co., which stated that she was disturbed regarding the Loan's negative amortization and three-year early surrender penalty. In June 2007, the Mortensens filed a complaint, which is similar to the one filed in this lawsuit, against Home Loan Center with the Arizona Department of Financial Institutions. On November 23, 2007, after review of the complaint and examination of corresponding documentation, the Arizona Department of Financial Institutions closed the complaint without initiating any administrative enforcement action.

In August 2007, the Mortensens moved out of their William Lyons home and into a new home they purchased in north Peoria, Arizona. Since September 2007, they have had renters in the William Lyons home who pay $1,150 per month. The Mortensens have not made payments on the Loan since about September 2008. Instead, Mr. Mortensen is using the rental income to compensate himself for the time he spends related to this lawsuit.

On August 14, 2008, the Mortensens initiated this lawsuit in Maricopa County Superior Court. On September 10, 2008, this case was removed to the federal district court. On January 16, 2009, the district court dismissed Mr. Mortensen's Truth in Lending Act ("TILA") claims because TILA confers a statutory right of action only on a borrower in a suit against the borrower's creditor, and Mr. Mortensen did not execute the Loan documents. (Doc. 22.)

On September 1, 2009, the Mortensens amended their complaint. The First Amended Complaint includes five counts:

---

[1]The actual purchase price for the house was $312,484.

|   |   |
|---|---|
| 1 | (1) Misrepresentation, Concealment of Material Facts (violation of A.R.S. |
| 2 | § 6-947 and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638(a)(4)); |
| 3 | (2) Breach of Fiduciary Duty; |
| 4 | (3) Misleading Advertising (violation of TILA); |
| 5 | (4) Bond Claim; and |
| 6 | (5) Commingling of Funds (in violation of A.R.S. § 6-947(C)). |

(Doc. 44.)

On December 12, 2009, Mrs. Mortensen passed away. On May 12, 2010, George Mortensen, as Personal Representative of his deceased wife Erna Mortensen, was substituted as the party plaintiff in her place.

## III. Analysis

### A. Plaintiff Has Not Produced Evidence to Establish a Genuine Issue of Material Fact Regarding Whether Defendants Made Misrepresentations, Concealed Material Facts, Failed to Make Required Disclosures, or Committed Fraud.

Essential to a claim for fraud, fraudulent misrepresentation, fraudulent concealment, or failure to disclose is a false statement or a failure to make a truthful disclosure. *See, e.g.*, *Haisch v. Allstate Ins. Co.*, 197 Ariz. 606, 610, ¶ 14, 5 P.3d 940, 944 (Ct. App. 2000); *Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982). Further, to prove fraud, a plaintiff must produce evidence showing that he reasonably relied on the false statement or omission. *Id.* In his motion for summary judgment and response to Defendants' motion for summary judgment, Plaintiff has not produced evidence that Defendants made any false statements or failed to truthfully disclose anything they were required to disclose. At most, he has shown potential confusion before closing about the Loan's interest rate after the first month and no detrimental reliance, much less reasonable reliance, on any possible understanding that the Loan's interest rate would be one percent for more than one month.

Plaintiff contends that Gutierrez failed to disclose the Loan's prepayment penalty and negative amortization and that the first month's interest was a "teaser rate." Mrs. Mortensen did not speak with Gutierrez before closing, so he could not have made any

- 6 -

false statements to her.  In deposition, Mr. Mortensen testified that he spoke with Gutierrez a couple of times, Gutierrez notified the Mortensens the Loan was interest only, and Mr. Mortensen did not remember Gutierrez saying anything about the interest rate, only the amount of the monthly loan payments.  Gutierrez told Mr. Mortensen that "we can always beat the builder's lender."  Mr. Mortensen conceded that monthly payments under the Loan were less than those that would have been required under the loan offered by the builder's lender.

Mr. Mortensen also testified that the preliminary Truth-in-Lending Disclosure dated July 20, 2005, misrepresented the Loan's interest rate.  In a box outlined in bold, under the title "ANNUAL PERCENTAGE RATE," the document states, "The cost of your credit as a yearly rate." and "5.7012%."  Several inches below that, in bold, is the following: "Note Rate: 1.0000 %."  Immediately below that there is an "X" by the following: "This transaction is subject to a variable rate feature and is secured by your principal dwelling.  Variable rate disclosures have been provided to you at an earlier time."  Mr. Mortensen testified that it was confusing to have two interest rates on the same page, but he did not seek clarification because he did not rely on that document.  Instead, he relied on the Lock-in Disclosure and Agreement and the Purchase Certification of Loan Pre-Approval Commitment.

The Lock-in Disclosure and Agreement, with Mrs. Mortensen's signature dated July 22, 2005, states in part:

> Loan Program:  1 MONTH MTA - JUMBO HARD P3
>
> Documentation Type:  STATED DOC
>
> Loan Amount: $249,600.00    Interest Rate:    1.000%
>
> . . .
>
> Prepay Term (Years):  3
>
> Lock Deposit:    $400.00

The Purchase Certification of Loan Pre-Approval Commitment, dated July 18, 2005, states:

| | | |
|---|---|---|
| | **Details of the Purchase:** | |
| | Purchase Price | $312,000 |
| | Loan Amount (not to exceed): | $255,000 |
| | Min. Down Payment: | 0-20% |
| | Residency: | Primary |
| | Loan Term: | Interest Only Option |
| | | 30 Year Term |

The Lock-in Disclosure and Agreement plainly states "1 MONTH." It does not state that the *annual* percentage rate is one percent. To the extent that the one percent rate was not clearly limited to one month, any reliance on such ambiguity was not reasonable, especially when the closing documents unambiguously stated a higher annual percentage rate for interest.

Plaintiff also contends that Gutierrez misrepresented that he spoke with Mrs. Mortensen when he took her loan application by telephone and that Dwinnie Lee, an account manager with Home Loan Center, certified that she spoke with Mrs. Mortensen about her credit report. The alleged misrepresentations were not made to either of the Mortensens and could not have been intended for their reliance. The Mortensens did not learn of these alleged misrepresentations until discovery and have not alleged any reliance on or harm caused by the alleged misrepresentations. Even if these records incorrectly suggest communications were made with the loan applicant, Mrs. Mortensen, instead of clarifying that the communications were made with Mr. Mortensen, no evidence of harm has been produced.

To the extent that Plaintiff contends Defendants misrepresented or failed to disclose the three-year prepayment penalty and negative amortization provisions of the Loan before closing, Mrs. Mortensen's testimony establishes that she did not rely on any information she received before closing except for the payment schedule, and she carefully considered the three-year prepayment penalty provision before she signed the closing documents on August 18, 2005.

Therefore, there is no genuine issue as to whether any of the Defendants made any material misrepresentation, committed fraud, or concealed or failed to disclose information they were required to disclose to the Mortensens. There is no genuine issue as to whether either Mr. or Mrs. Mortensen relied on any misrepresentation. Even if any of the Defendants owed either Mr. or Mrs. Mortensen a fiduciary duty, it was not breached.

For the foregoing reasons, Defendants will be granted summary judgment on Counts One, Two, and Three. Because Count Four is a claim on Home Loan Center's bond deposited with the Arizona Department of Financial Institutions and depends on finding liability under Counts One, Two, or Three, it also must fail.

### B. Plaintiff Has Not Produced Any Evidence to Justify Equitable Tolling of the Statute of Limitations for TILA.

Plaintiff contends that Defendants violated 15 U.S.C. § 1638(a)(4), which requires a creditor to disclose the "finance charge expressed as an 'annual percentage rate,' using that term," and 15 U.S.C. § 1664(c), which requires an advertisement related to consumer credit that states the rate of a finance charge to state the rate of that charge expressed as an annual percentage rate. The preliminary Truth-in-Lending Disclosure stated the "annual percentage rate" was 5.7012%, but also stated, "Note Rate: 1.0000%." The Truth-in-Lending Disclosure signed by Mrs. Mortensen at closing stated the "annual percentage rate" was 5.742% and does not reference a "Note Rate." It does state, however, that the Loan contains a variable rate feature. Plaintiff does not dispute the truthfulness of the Truth-in-Lending Disclosure provided for Mrs. Mortensen to sign at closing.

Any action under TILA must be brought within one year from the date of the occurrence of the alleged violation. 15 U.S.C. § 1640(e). The limitations period in § 1640(e) generally runs from the date of consummation of the transaction, which was August 18, 2005, and therefore expired before the Mortensens initiated this action. *See King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).

1 "[T]he doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *Id.* Plaintiff argues that the limitations period should be tolled while the administrative claim was pending, but offers no authority for equitable tolling beyond the time the borrower discovered or had reasonable opportunity to discover the allegedly improper disclosure.

Even if Mrs. Mortensen had read and was confused by the preliminary Truth-in-Lending Disclosure and the Lock-in Disclosure and Agreement, by January 2007, when she wrote to Countrywide, she was aware that the principal amount of the debt was increasing while they were making payments, and therefore the Loan was not accruing interest at the annual rate of one percent. Thus, the one-year limitations period would have expired no later than January 2008, even if the doctrine of equitable tolling were applied liberally.

**C.    Plaintiff Has Not Produced Evidence to Establish Either of the Mortensens Were Owed a Fiduciary Duty.**

A lender does not owe a borrower a fiduciary duty in an ordinary loan transaction. *McAlister v. Citibank*, 171 Ariz. 207, 212, 829 P.2d 1253, 1258 (Ct. App. 1992). To establish that any of the Defendants owed the Mortensens a fiduciary duty, Plaintiff must show that the Defendant acted as their financial advisor and they relied upon the Defendant's financial advice. *Id.* Plaintiff has not produced any evidence that any Defendant acted as the Mortensens' financial advisor or that they relied on the Defendant's financial advice. In deposition, Mr. Mortensen testified that he did not have a relationship with any of the three individual Defendants, Kenneth Block, Billy Boulden, and Anthony Hsieh. Mrs. Mortensen did not speak with anyone but the closing officer. Mr. Mortensen testified that the only basis for a fiduciary relationship was that these individuals represented their companies and should have been supervising their loan officers and staff.

Plaintiff also contends that the individual Defendants violated A.R.S. § 6-947(P), which requires a mortgage banker to reasonably supervise the activities of a licensed loan

originator employed by the mortgage banker. Even if Plaintiff has a private right of action to enforce A.R.S. § 6-947(P), which the Court does not decide here, there is no evidence from which to conclude that any of the individual Defendants failed to reasonably supervise the activities of a licensed loan originator or that any loan originator committed any wrongdoing under the supervision of any of the individual Defendants.

**D.     Plaintiff Has Not Produced Evidence Showing Improper Commingling.**

Plaintiff contends that Defendant Home Loan Center commingled monies in violation of A.R.S. §§ 6-946(C) and 6-947(C). Mrs. Mortensen signed a forty-day Lock-In Disclosure and Agreement to lock in a one percent interest rate for the first month of the Loan and paid a $400.00 non-refundable fee to secure the rate. The Lock-In Disclosure and Agreement stated that the fee would not be refunded but would be credited to the borrower if the loan closed. The closing documents indicate that Mrs. Mortensen was given a $400.00 credit as promised. Plaintiff has produced no evidence to show that any of the Defendants improperly handled the $400.00 or that Plaintiff was damaged thereby.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. 73) is granted and Plaintiff's Motion for Summary Judgment (Doc. 76) is denied.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendants and against Plaintiff. The Clerk shall terminate this case.

DATED this 28th day of July, 2010.

_____
Neil V. Wake
United States District Judge